[No. 1366-1.  Division One—Panel 2.  April 2, 1973.]

NORTHWEST CASCADE CONSTRUCTION, INC., *et al., Respondents,* v. CUSTOM COMPONENT STRUCTURES, INC., *Appellant.*

*Thomas C. McCarthy*, for appellant.

*Cartano, Botzer & Chapman* and *Thomas C. McKinnon*, for respondents.

HOROWITZ, J.—The principal question here is whether two of the three plaintiffs who recovered the judgment appealed from are precluded from recovery because they were not registered under RCW 18.27.020, the contractor's registration statute. The trial court held that two of the plaintiffs, in performing the construction work, did not do so "in the pursuit of an independent business" as required by RCW 18.27.010 and entered judgment in favor of all three plaintiffs. Defendant Custom Component Structures, Inc., appeals.

The facts of the case as the court found or could have found them are these. In October, 1968, Custom and Northwest Cascade Construction, Inc., a contractor registered under RCW 18.27, orally agreed that the latter, as subcontractor, would erect walls in 12 apartment houses in what was known as the Aero Kenyon Job Project in Seattle, Washington. Northwest completed its work on the first four apartment houses under the direction of its stockholder and vice-president, Paul Box. During the period of that performance, plaintiff Kuipers worked for Northwest as a superintendent, and plaintiff Mowry kept Northwest's books as its accountant. Custom paid Northwest's billings as prepared by Mowry from time to time, covering both the principal compensation called for by the oral subcontract, and for extras incident thereto.

In November, 1968, Northwest decided to work on a new job in Olympia, Washington. It was thereupon orally agreed by Northwest, Kuipers and Mowry on the one hand, and Custom on the other, that Messrs. Kuipers and Mowry, with the assistance of Northwest, would complete performance of Northwest's oral subcontract. Custom did not release Northwest of the latter's subcontract obligation to complete performance. Kuipers and Mowry, with Northwest's knowledge and consent, agreed that because they were not registered contractors they would utilize Northwest's registration, including the bond, under the Washington contractor's registration law, and would file various state and federal reports required to be filed by the contractor in the name of Northwest. Custom was informed of the arrangement and raised no objection.

Plaintiffs Kuipers and Mowry and Northwest, acting through Paul Box, completed the performance of Northwest's subcontract, including the performance of extras incident thereto. During performance, Kuipers and Mowry adopted the trade name of M-K Construction Co. and made billings in that name to Custom. They also signed certain certificates that Messrs. Kuipers and Mowry were the only persons interested in the M-K Construction Co. Paul Box, who was Northwest's vice-president, took an active part in completing the contract. He was in almost daily contact with Custom's president concerning progress in completing the subcontract work on the last eight buildings of the project. Northwest's equipment was left on the project for the use of Mowry and Kuipers in completing the project, and they made payments on part of that equipment. Paul Box's salary was on the payroll account of Messrs. Mowry and Kuipers.

About March or April, 1969, a dispute arose concerning the performance of the work. Messrs. Mowry and Kuipers filed a lien. Custom insisted that the lien be released before they discussed payment of the balance owing. Mowry thereupon released the lien. About a month later Northwest, by letter signed by Mowry as its secretary, formally

notified Custom that Northwest was involved in the job. Custom refused to pay the amounts owing on the last eight buildings, including payment for extras. Custom contended that neither Mowry nor Kuipers were registered contractors under RCW 18.27 and were not entitled to payment of the balance owing. The trial court held that RCW 18.27 was not a defense because plaintiffs Mowry and Kuipers were not engaged "in the pursuit of an independent business." RCW 18.27.010. It accordingly entered judgment for all three plaintiffs, both on the oral contract and for extras. Custom appeals.

■■ RCW 18.27, it has been held, was enacted for the protection of "a defenseless public" against being victimized "by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states." *Stewart v. Hammond,* 78 Wn.2d 216, 219, 471 P.2d 90 (1970). RCW 18.27.020 makes it "unlawful for any person to submit any bid or do any work as a contractor until such person shall have been issued a certificate of registration by the state department of licenses." RCW 18.27.080 makes registration prerequisite to suit for ·compensation or for breach of a construction contract. Registration may be obtained, *inter alia,* upon application and compliance with the bond and insurance requirements set forth in the statutes. RCW 18.27.030, .040, .050. Even though the construction work done by a nonregistered contractor enriches the owner, the contractor cannot recover. *Vedder v. Spellman,* 78 Wn.2d 834, 480 P.2d 207 (1971); *Stewart v. Hammond, supra; Suburban Fuel Co. v. Lamoreaux,* 4 Wn. App. 179, 480 P.2d 216 (1971). Nevertheless, substantial compliance with the statute is sufficient, lest the statute become an " 'unwarranted shield for the avoidance of a just obligation.' " *H.O. Meyer Drilling Co. v. Alton V. Phillips Co.,* 2 Wn. App. 600, 607, 468 P.2d 1008 (1970), *aff'd,* 79 Wn.2d 431, 486 P.2d 1071 (1971).

■ RCW 18.27.010 defines the kind of a contract to which RCW 18.27 applies. The contractor is

any person, firm or corporation who or which, *in the pursuit of an independent business* undertakes to . . . construct . . . any building . . . or other structure . . . or improvement attached to real estate . . .

(Italics ours.) The reach of the statute is confined to one engaged in improvement construction in the course of a regular and continuing occupation or calling as a contractor performing the kind of work contained in the definition. Thus, it is possible for one to bid for or work on a single construction job without doing so "in the pursuit of an independent business." The rationale of *Dane v. Brown,* 70 F.2d 164, 165 (1st Cir. 1934), and *Merritt v. State,* 19 Tex. Ct. App. R. 435, 436 (1885), is consistent with and supports the view stated. The fact that the work is of the same nature as work that could be but is not in fact performed in the course of an independent business does not mean that registration as a contractor is required under RCW 18.27.

The registration requirement under RCW 18.27 for contractors engaged "in the pursuit of an independent business" is somewhat similar in purpose and scope to the broker's license requirement under the then Securities Act, RCW 21.04. That act requires a license of brokers "engaging in the business" of dealing in securities. The latter phrase was explained in *Marble v. Clein,* 55 Wn.2d 315, 347 P.2d 830 (1959). The court held that the license requirement did not prevent recovery of compensation by one not regularly engaged in selling securities who, for an agreed compensation, undertook to and did make a single sale of securities. The court explained:

"Broker" is defined as including every person or corporation, other than agent, "engaging in the business" of dealing in securities. Appellant was not *engaged in the business* of dealing in securities, but, on the contrary, the complaint alleges appellant was involved in but an isolated transaction. In the absence of any language bringing a single transaction within the statutory prohibition, the act cannot be so extended. To do so would be to imply a legislative intention where none is expressed, to

deny settled rules of construction, and to disregard the decisional law. This we will not do.

55 Wn.2d at 318. The court approved the following statement from *Jones v. State*, 25 Ala. App. 410, 149 So. 855 (1933), quoting its own earlier opinion which held:

> " '. . . the term "engage in business" as expressed in the statute . . . has a well defined meaning in law. It means that employment which occupies the time, attention, and labor of the person so engaged in business. That which a man occasionally engages in, as opportunity offers, or inclination prompts, is, for the time being his business; yet the law uses that term to indicate a regular . . . employment, not one that is occasional, [or] irregular . . .' "

55 Wn.2d at 319. *See generally* Annot., 118 A.L.R. 646, 657 (1939).

In the instant case, we briefly consider two findings excepted to by Custom before we apply to the facts here the phrase "in the pursuit of an independent business." The court found:

> Northwest Cascade continued to have an obligation under their original contract with Custom Components for the completion of the remaining buildings.

Defendant contends the finding is not supported by substantial evidence. We disagree. Custom never released Northwest from its construction subcontract. The fact that Northwest, with Custom's knowledge and approval, permitted Mowry and Kuipers to file federal and state reports in Northwest's name is conduct consistent with Custom's and Northwest's recognition of the latter's continuing interest in and responsibility for the completion of the job.

The court also found:

> Northwest Cascade remained involved in a sufficient way to satisfy the purposes of the registration statute . . .

Custom attacks this finding as an unsupportable conclusion of law. The court found it unnecessary to expressly find that Custom had the bond, insurance and other protections afforded by Northwest's registration under RCW 18.27, but

expressed the view that such protections existed. The performance of Northwest's partially executory contract being involved and Northwest, with Custom's consent, having actively assisted plaintiffs Mowry and Kuipers to complete performance of Northwest's contract, we agree with the trial court's view that Custom had the protection of Northwest's registration.

Furthermore, Custom well knew 'from the beginning that Mowry and Kuipers were not engaged in the construction contracting business. It was Northwest that was the contractor, plaintiffs Mowry and Kuipers being the contractor's employees, the former working as an accountant and the latter working as a superintendent. Plaintiffs Mowry and Kuipers, to help Northwest meet its special needs and with Custom's consent, undertook to help Northwest complete the performance of the latter's oral subcontract with Custom. Neither Mowry nor Mowry and Kuipers together had ever owned or conducted a contracting business, either on a regular or continuing basis, or at all, or had ever undertaken a job of construction work as entrepreneurs. The court had a right to believe that neither Mowry nor Kuipers, in acting as they did, intended to enter the occupation or calling of construction contractors with this single job to be the first of repeated and continuing construction jobs to be undertaken in the future. The fact that neither Mowry nor Kuipers undertook to become registered contractors—a requirement of which they had knowledge by virtue of their work as employees for Northwest—is consistent with the view that they did not intend to enter into the calling or occupation of construction contractor. The court had a right to believe that this special job for their employer, Northwest, was to be the first and last of its kind so far as these individual plaintiffs were concerned. Under the circumstances stated, this single and isolated job of work falls within the scope and purpose of the single transaction doctrine explained in *Marble v. Clein, supra; Merritt v. State, supra.*

Defendant contends that plaintiffs Mowry and Kuipers

have no standing to sue. This contention is but a different form of stating the contention we have rejected that plaintiffs Mowry and Kuipers were required to be registered. Furthermore, it may be doubted if Custom would be injured by the form of the judgment entered. *See Harrison v. Puga,* 4 Wn. App. 52, 65, 480 P.2d 247, 46 A.L.R.3d 415 (1971).

The defendant contends that, in any case, plaintiffs Mowry and Kuipers are required to be registered for purposes of collecting compensation for the extras. However, the court could reasonably have inferred from the evidence that extras incident to the principal work of the oral subcontract were contemplated as part thereof. During the work on the first four apartment houses, Custom ordered extras of Northwest and paid Northwest therefor. The court could have reasonably inferred that the construction work on the remaining eight apartment houses contemplated the performance of extras as well as was the case during the construction of the first four apartment houses. The principal work and extras contemplated by the subcontract were parts of a single overall performance. Accordingly, registration was no more required with respect to the extras than it was required with regard to the original work specified.

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied June 6, 1973.

Review granted by Supreme Court September 20, 1973.