[No. 42862. En Banc. February 21, 1974.]

NORTHWEST CASCADE CONSTRUCTION, INC., et al., Respondents, v. CUSTOM COMPONENT STRUCTURES, INC., Petitioner.

*Thomas C. McCarthy*, for petitioner.

*Cartano, Botzer & Chapman*, by *Thomas C. McKinnon*, for respondents.

HUNTER, J.—This case concerns an action brought by the respondents (plaintiffs), Northwest Cascade Construction, Inc., Russell Mowry and Dave Kuipers, against the petitioner (defendant), Custom Component Structures, Inc., for the balance due on a construction contract, plus extra compensation for additional work performed. The trial court entered judgment for the plaintiffs, and the Court of Appeals, Division One, affirmed the trial court. We granted the defendant's petition for review.

The plaintiff, Northwest Cascade Construction, Inc., hereinafter referred to as "Northwest," is a corporation owned and operated by its stockholders, Al Ballard, Tom Ballard, and Paul Box. The plaintiff, Dave Kuipers, was employed as a general superintendent by Northwest, and the plaintiff, Russell Mowry, was employed by Northwest as the accountant to maintain the records and books of the business. The defendant, Custom Component Structures, Inc., hereinafter referred to as "Custom," is a corporation engaged in manufacturing building components, and had a contract during

the period in question to furnish and erect certain component packages consisting of exterior walls, interior partitions, stairs, and other items for the Aero-Kenyon project in Seattle.

In October 1968, Northwest entered into an oral contract with Custom whereby Northwest was to erect certain component packages constructed by Custom for 12 buildings in the Aero-Kenyon project. At the time of entering into the contract, Northwest was a duly registered contractor under the registration of contractors act, RCW 18.27 (hereinafter also referred to as the registration act or act). Northwest commenced construction on the project under the direction of its stockholder and vice-president, Paul Box, and Dave Kuipers who was in charge of the on-the-job work for Northwest. As construction progressed, Custom was billed from time to time by Mowry, the accountant, and Northwest was paid for the work performed, covering both the principal compensation called for by the oral subcontract and for extras incident thereto.

By November 1968, Northwest had erected four out of the 12 buildings, but desired to concentrate its business activities on another project in Olympia. Consequently, Northwest approached Kuipers and Mowry concerning their coming into the project, and an oral agreement was reached between Northwest, Kuipers and Mowry that Kuipers and Mowry were to take over and complete the construction of the remaining buildings. Custom was made aware of the arrangement between the plaintiffs that Kuipers and Mowry were to take over the project, although Custom was not informed at that time as to the exact role which Northwest was to play in the completion of the buildings. Since Kuipers and Mowry were not registered contractors under the registration act, they were to utilize the various reporting numbers of Northwest in filing state and federal reports required to be submitted, and would utilize Northwest's registration license and bond under the registration of contractors law.

The plaintiffs Kuipers and Mowry then proceeded to

complete the project, and they entered into a contract with Custom whereby they were to complete the remaining buildings and to receive $13,185.60 for their work. This contract listed Paul Box, the vice-president of Northwest, as a party to the contract, although Paul Box failed to sign that agreement. During performance, Kuipers and Mowry adopted the name of "M-K Construction Company" and made billings in that name to Custom. Kuipers and Mowry also signed certain certificates that they were the only persons interested in the M-K Construction Company. Subsequent to the time when Kuipers and Mowry took over completion of the project, Paul Box, who was on the payroll account of M-K Construction Company, continued to take an active part in completing the project, and was in frequent contact with Custom's president, John Lofgren, concerning the progress of completion of the remaining buildings. In addition, Northwest's equipment was left on the project site, and Kuipers and Mowry made payments on part of that equipment.

Under the above circumstances, Kuipers and Mowry completed the remaining buildings, and performed certain extra work, including the replacement of defective siding and installation of window liners. The defendant Custom agreed to pay the sum of $8 per hour for extra hours expended on the replacement of siding, and the defendant further agreed to pay $280 for the installation of window liners. By March or April 1969, however, a dispute arose concerning the project, and M-K Construction Company filed a lien against Custom, which was later released. About a month later Northwest, by letter signed by Mowry, formally notified Custom that Northwest was involved in the job. Custom refused to pay the $1,335 owing on the contract for the remaining buildings, and refused to pay Kuipers and Mowry for the extra work performed on the project. Custom contended that since neither Kuipers or Mowry were registered contractors under the registration act, they were not entitled to maintain an action for the collection of

the amount owing under the contract under RCW 18.27.080. That section of the act provides as follows:

No person *engaged in the business or acting in the capacity of a contractor* may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract.

(Italics ours.)

In an action by the three plaintiffs against the defendant Custom, the trial court held that RCW 18.27.080 was not a defense to the bringing of the suit because the plaintiffs Kuipers and Mowry were not engaged " 'in the pursuit of an independent business' " under RCW 18.27.010, and thus did not have to register under the law. The trial court accordingly entered judgment for all three plaintiffs. Although the trial court failed to hold that the three plaintiffs could recover under RCW 18.27.020[1] on the theory that the plaintiffs constituted a joint venture, the court held that Northwest continued to have a responsibility under the contract even after Kuipers and Mowry came into the project. The court further concluded that "substantial compliance" existed under the act on the part of Kuipers and Mowry since the defendant Custom had the full protection of Northwest's bond during the course of the construction.

The Court of Appeals, Division One, in *Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.*, 8 Wn. App. 581, 508 P.2d 623 (1973), affirmed the judgment

---

[1]RCW 18.27.020 provides:

"It shall be unlawful for any person to submit any bid or do any work as a contractor until such person shall have been issued a certificate of registration by the state department of licenses. A partnership or joint venture shall be deemed registered if any one of the general partners or venturers whose name appears in the name under which the partnership or venture does business shall be registered. A violation of this section shall be a misdemeanor."

for the plaintiffs. The court held that the plaintiffs Kuipers and Mowry were not required to register under the act in order to recover for the principal work and extras because "[t]he reach of the statute is confined to one engaged in improvement construction in the course of a regular and continuing occupation or calling as a contractor performing the kind of work contained in the definition." The court construed the language of the act and concluded that, as on these facts, it was possible for one to work on a single and isolated construction job without doing so " 'in the pursuit of an independent business.' " In addition, the Court of Appeals, in effect, affirmed the conclusion of the trial court that there was "substantial compliance" with the act since Northwest had actively assisted Kuipers and Mowry in completing the buildings, and Custom therefore had the protection of Northwest's bond and registration during the period of construction.

In its petition for review, the defendant's first contention is that the Court of Appeals erroneously construed the provisions of the registration act, when it held that the registration requirements under the act for contractors engaging " 'in the pursuit of an independent business' " do not apply to persons such as Kuipers and Mowry who engage in a single and isolated construction project. We must agree with this contention of the defendant. RCW 18.27.010, which defines the kind of contract to which the act applies, provides as follows:

A "contractor" as used in this chapter is any person, firm or corporation who or which, *in the pursuit of an independent business* undertakes to, or offers to undertake, or submits a bid to, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building . . . or, who, to do similar work upon his own property, employs members of more than one trade upon a single job or project or under a single building permit except as otherwise provided herein.

(Italics ours.)

█ █  In interpreting the above provision to mean that a person engaging in a single and isolated business venture is exempt from the requirements of the act, the Court of Appeals failed to rely upon any decision of this court interpreting its provisions. Rather, the Court of Appeals based its interpretation of the act upon the rationale of other cases in other jurisdictions, *Dane v. Brown,* 70 F.2d 164 (1st Cir. 1934); *Merritt v. State,* 19 Tex. Ct. App. R. 435 (1885), and upon a decision of this court interpreting the scope of the then Securities Act, RCW 21.04. *Marble v. Clein,* 55 Wn.2d 315, 347 P.2d 830 (1959).

We believe the Court of Appeals erred in relying upon the above authority in construing the meaning of RCW 18.27.010, and conclude that the Court of Appeals read something into the meaning of RCW 18.27.010, which is not apparent from the plain and ordinary language of that statutory provision. In *Stewart v. Hammond,* 78 Wn.2d 216, 219, 471 P.2d 90 (1970), we addressed a similar issue involving the statutory interpretation of the term "contractor" under RCW 18.27.010, where we stated:

> The common law definition of "independent contractor" is not applicable because a specific statutory definition has been adopted. Furthermore, foreign authority is not helpful because little uniformity exists in either the content or application of the various "contractor registration" statutes. Each case rests on its own peculiar fact pattern or its own unique statutory language.

(Footnote omitted.)

█  In the instant case, RCW 18.27.010 provides a specific statutory definition of the term "contractor," and in no way implies that a party engaging in a single and isolated business venture shall be exempt from the registration requirements of the registration act. Furthermore, the rule formulated by the Court of Appeals is inconsistent with the express intent of the legislature of this state, and is contrary to the public purpose and policy behind RCW 18.27. In *Stewart v. Hammond, supra,* we discussed the purpose behind the registration act on page 219:

> RCW 18.27, *et seq.,* was designed to prevent the victim-

izing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states. Public protection was sought by the registration and bonding of contractors. RCW 18.27.020-.040 inclusive. Noncompliance was discouraged by providing a criminal penalty, RCW 18.27.020, and by denying offenders access to the courts for collection of compensation for performance of work or for breach of contract. RCW 18.27.080.

If the purpose of the registration act is indeed to prevent fraud against the public by unreliable and incompetent contractors, there is no logical reason why such fraud cannot be perpetrated in a single venture as well as in a series of contracts. We therefore conclude that the Court of Appeals placed an erroneous construction upon the meaning of RCW 18.27.010 in this case, and hold that a person engaging in an isolated and single business venture is as subject to the provisions of the registration act as is a party engaging in the construction business on a regular and continuing basis.

The next issue raised by the defendant's petition for review is whether there was "substantial compliance" with the act on the part of Kuipers and Mowry to satisfy the purposes of the registration act in view of Northwest's involvement in the completion of the remaining buildings. We believe substantial compliance with the registration act exists on these facts.

■■ This court recognizes the rule that proof of "substantial compliance" with the registration requirements of the act is sufficient to permit a contractor to maintain an action for compensation so long as the compliance satisfies the legislative purpose behind the registration act to protect the public against "unreliable, fraudulent, and incompetent contractors." *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971); *H.O. Meyer Drilling Co. v. Alton V. Phillips Co.*, 79 Wn.2d 431, 486 P.2d 1071 (1971); *Andrews Fixture Co. v. Olin*, 2 Wn. App. 744, 472 P.2d 420 (1970).

In the instant case, we feel that Kuipers and Mowry have

substantially complied with the act in light of the evidence at the trial that Custom never released Northwest from its obligation under the original contract for the completion of the remaining buildings, and in light of Northwest's significant involvement throughout the course of the project as a duly registered contractor under the registration act. The trial court entered the following portion of finding of fact No. 5, which the Court of Appeals held was supported by substantial evidence:

> Northwest Cascade continued to have an obligation under their original contract with Custom Components for the completion of the remaining buildings.

We agree with the Court of Appeals that this finding is supported by substantial evidence in the record, and adhere to the rule that under such circumstances a finding becomes a verity as far as we are concerned upon appeal. *Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972); *Ormiston v. Boast*, 68 Wn.2d 548, 413 P.2d 969 (1966). There is no evidence in the record that Custom released Northwest from its original contract to complete the buildings. In fact, Custom's naming of Paul Box, vice-president of Northwest, as a party to the contract dated December 11, 1968, indicates that Custom had no intention to release Northwest from its obligation under the original contract. The following testimony by Paul Box during the trial further corroborates our conclusion that Northwest had a continuing interest in and responsibility for the completion of the job:

> Q. Did you come to any sort of an agreement concerning Mr. Mowry and Mr. Kuipers coming in on the project? A. Yes, we did. Q. What was the nature of this agreement? A. They were going to finish the job and we would let them use our equipment to finish it. I would help them to a degree, but if it took too much of my time Dave had agreed to pay for more, which it did. Q. What about the books, who was to keep the books on any new arrangement? A. We were going to continue it right through our books. Q. What about numbers, registration numbers with state agencies? A. We were going to run it

just as if Northwest Cascade was still on the job. Q. Was it your understanding under this agreement that Northwest Cascade continued to have a responsibility for the project? A. Well, I felt the responsibility to it. I can't answer for the other two. Q. Did you have any conversations with any of the other people involved in the project concerning Mr. Mowry's and Mr. Kuipers' coming in? A. I'm sure we spoke with everybody that was concerned. Q. Do you recall what you informed these people at the meetings? A. That Dave was going to finish the job, that there was to be no change in the contract or anything that I am aware of. Q. Do you recall informing Mr. Lofgren of this change? A. Yes, we did.

The above testimony by Paul Box supports our conclusion in this case that there was substantial compliance on the part of Mowry and Kuipers with RCW 18.27 to afford Custom the protection contemplated by the registration act. The trial court's finding of fact No. 4 also provides in part:

> Northwest Cascade remained involved in a sufficient way to satisfy the purposes of the registration statute, although Northwest Cascade was not a joint venturer.

The Court of Appeals affirmed the above finding by the trial court, and held that there was ample evidence in the record to support the finding. We agree. The following testimony by Dave Kuipers indicates that Northwest assumed an active role in the completion of the project, and that Custom was aware of Northwest's active involvement with Kuipers and Mowry in the completion of the project under the circumstances of this case:

Q. Were any meetings held with yourself, Mr. Box, and representatives of Custom Components and Delguzzi? A. Yes, they were. Q. When were these meetings held? A. They were held around the end of November on the job site. Q. Who represented Custom Components at these meetings? A. Mr. Lofgren. Q. How about Delguzzi Construction? A. Bob — Q. Would it be Spielman? A. Spielman. Q. What was discussed at these meetings? A. The point, the point of interest anyway, was that would Northwest Cascade still be involved since they were the ones that initially went into it. Q. Who asked that particular question? A. Bob Spielman asked that

particular question and Paul assured them that they would be, Mr. Box. Q. Prior to these meetings had you had discussions with Mr. Box and Mr. Mowry concerning the bringing in of you and Mr. Mowry to the project? A. Yes. Q. Did you reach an agreement as to your participation? A. Yes we did. Q. And what generally were they, was the nature of this agreement. . . . A. The nature of the agreement was that Paul would, or Mr. Box, would come out to the job site at least twice a week and possibly more, and that he would, as long as there was profit, share a portion of that profit and the remainder of the profit would be split between Mr. Mowry and myself. Q. Now he would come out. Would he come out to the job site as a representative of Northwest Cascade Construction? A. Yes. Q. Was it understood between the three of you that Northwest Cascade continued to have an interest in this project? A. Yes, it was. That was the point that Mr. Spielman kept elaborating on during this meeting.

From this record we therefore hold that substantial compliance with the registration act, on the part of Kuipers and Mowry, exists under the circumstances of this case where the evidence reveals that Northwest, as a duly registered contractor under RCW 18.27, remained obligated under the original contract to complete the buildings, and where Northwest remained sufficiently involved in the construction of the project to afford Custom the protection of the registration and bond contemplated by the registration act.

The defendant's final contention is that the Court of Appeals erred in holding that the plaintiffs Kuipers and Mowry were not required to register under RCW 18.27 in order to collect for the extra work performed on the project buildings. This contention is without merit. We find the reasoning of the Court of Appeals to be sound on this issue that the trial court could have reasonably inferred that the performance of extras was contemplated during the construction of the first four buildings, and was therefore likewise contemplated during the construction work on the remaining buildings. The principal work and extras were, therefore, parts of a single overall performance and, ac-

cordingly, registration by Kuipers and Mowry was no more required with respect to the extra work performed than it was required with regard to the principal work.

The judgment for the plaintiffs is affirmed in the amount owing for the principal work and extras as determined by the trial court. The decision of the Court of Appeals is reversed in part and affirmed in part as is consistent with this opinion.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

STAFFORD, J., concurs in the result.