[No. 1327-2.    Division Two.    March 17, 1975.]

HAROLD B. DUNKELBERGER et al., *Appellants*, v. DONALD B. BAKER et al., *Respondents*.

*Francis J. Walker*, for appellants.

918

*Clifford F. Cordes, Jr.*, and *Parr & Cordes*, for respondents.

PETRIE, J.—This is an appeal from the trial court's denial of the claims of an individual contractor and of a corporate construction and supply company for money allegedly due and owing for services rendered in the construction of a private residence for the defendants. Resolution of this appeal requires a determination of two issues: (1) Did the trial court properly dismiss the claim of the individual contractor on the ground that the contractor had been paid in full for all services rendered? (2) Did the trial court properly dismiss the claim of the corporate plaintiff on the ground that there had been no compliance with the provisions of RCW 18.27.010 *et seq.*, the contractor's registration statute? We affirm the judgment of the trial court.

The material facts, or facts upon which the outcome of this litigation depends, are undisputed. There is no objection to the trial court's finding of fact that on October 9, 1967, at the request of defendant Donald B. Baker, plaintiff Harold B. Dunkelberger commenced construction of a private residence for the defendants. At the time plaintiff was a licensed and bonded general contractor doing business as a sole proprietor under the name Olympic View Builders Supply. While the construction of this residence was in progress, in April of 1968, plaintiff made a decision to discontinue doing business as a sole proprietorship and to form a corporation. The corporation was to continue in the construction contracting business, which had formerly been principally the business of plaintiff Harold B. Dunkelberger, but was also intended to be a building supply company. There is no objection to the trial court's finding of fact that on or about April 22, 1968, at the request of the defendants, the *corporation*, plaintiff Olympic View Builders Supply, Inc., rather than the *individual* plaintiffs commenced to perform the labor and furnish the materials necessary to construct the defendants' new residence.

Construction of the residence ceased and the instant liti-

gation ensued in December of 1968. The defendants had not made a payment since June of 1968, and it had become apparent that the cost of the labor and materials needed to complete the home would be in excess of the contractor's estimate furnished to the defendants and their banker in March. The estimated cost of completing the home then had been approximately $36,460, whereas, at the time construction was terminated, approximately $39,000 had been paid by the defendants and plaintiffs claimed an additional $30,250.36 was due and owing. A notice of claim of lien on the property in that amount was duly filed on December 24, 1968, and this action for a judgment and foreclosure of the lien on behalf of the individual plaintiffs and on behalf of the plaintiff corporation was commenced.

The first assignment of error in this appeal is to the trial court's dismissal of Harold B. and Margaret A. Dunkelberger as individual parties plaintiff. Here plaintiffs challenge the trial court's finding of fact that prior to April 22, 1968, when the corporation began furnishing the labor and materials for defendants' residence, the individual plaintiffs had been paid in full for all labor and materials supplied by them.

This assignment of error is entirely without merit, for both individual plaintiffs unequivocally admitted in their testimony that at the time the corporation was formed and began doing business with the defendants, the defendants had paid all their obligations to the individual plaintiffs, leaving no outstanding debt to the sole proprietorship. Both plaintiffs repeatedly conceded that the unpaid claims upon which this action was predicated were claims which accrued subsequent to the time the corporation undertook to complete the construction project and were claims for services rendered by the corporation. Under these circumstances there can be no question that the individual plaintiffs were properly dismissed, and the remaining question then is whether the claim of the plaintiff corporation should also have been dismissed.

The assignment of error with regard to the corporate

claim is that the trial court improperly ruled the corporation had not substantially complied with the requirements of the contractor's registration statute, specifically, RCW 18.27.080, which prohibits any contractor from maintaining an action for compensation without proof that the contractor was duly registered with the State Department of Labor and Industries at the time the contract for performance of the work was entered.[1] At the outset it should be emphasized it is absolutely uncontroverted that the corporation, as an entity, took *no* steps *whatsoever* to complete the required registration as a contractor, nor is any contention advanced that the corporation is not a "contractor," or in some other manner exempt from operation of the statute's provisions. Rather, the sole argument of the plaintiff corporation is a general assertion that this case is within the "substantial compliance rule."

It is of course true that the courts of this state have on several occasions held that *strict compliance with the registration requirements may not always be necessary.* A contractor may be allowed to prosecute a claim for compensation if he has "substantially complied" with the statute, or, in other words, has fulfilled the policy or purpose of the statute. For example, in *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971), the Supreme Court delineated the two crucial provisions of the statute: the requirement of a contractor's surety bond, and the requirement that a contractor obtain public liability and property damage insurance. The holding of the court in that case was as follows:

> [A]ppellant contractors had substantially complied with

---

[1] RCW 18.27.080 provides:

"No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract."

the provisions of RCW 18.27; *i.e.*, they had secured bonding and insurance—those indicia of minimal financial responsibility required by the statutory enactment to protect the general public against the unreliable, fraudulent or incompetent contractor. Since appellants had substantially complied with the requirements crucial to the underlying design intended by the legislature in the enactment of RCW 18.27, we hold that the appellants' complaint does state a claim upon which relief can be granted.

*Murphy v. Campbell Inv. Co., supra* at 422.

In the instant case it is quite clear that the plaintiff corporation had secured neither bonding, nor insurance. The sole argument advanced for the application of the doctrine of "substantial compliance" is predicated upon the fact that plaintiff Harold Dunkelberger *individually* held a valid license, which, it is argued, furnished protection to defendants. In support of this contention plaintiffs refer us to the following testimony of Harold Dunkelberger as proof of substantial compliance:

THE WITNESS: There was a suit brought against me for the benefits to the Painters' Union for the work that was done during that period of time, after incorporation. The suit was brought against my bond and my license, personally, which I paid, which covered Mr. Baker's job also. That was $468, I believe. I don't remember that.
Q. And that was for which, the painters or carpenters?
A. That was for the painters.
Q. Was there similar liability for the carpenters?
A. Yes.
Q. Did you pay that, personally, out of your own allocation?
A. Yes.
Q. How much was that?
A. Thirteen hundred and some—$1,340, I believe.

In the first place, it should be obvious that this testimony, if accepted by the trier of the facts, would establish nothing more than the fact that plaintiff Harold Dunkelberger personally paid claims which, according to his testimony, were properly claims against the corporate en-

tity. Although Mr. Dunkelberger may have been the primary "moving force" behind the corporation, he was not the only shareholder, officer or agent of the corporation capable of incurring a corporate liability. It is a long leap from the testimony quoted above to the proposition that the *surety* on Mr. Dunkelberger's individual bond, as well as his individual insurer, had bargained for and would be bound to compensate anyone for defaults or derelictions of the corporate entity occasioned by the conduct of any of the corporation's present or future officers and agents. *See Nicolaysen v. Burgess,* 10 Wn. App. 224, 517 P.2d 222 (1973).

In the second place, the contention that plaintiff Harold Dunkelberger's individual compliance with the registration statute in any way afforded the defendants protection is inconsistent with plaintiffs' repeated insistence throughout these proceedings that there never was a binding contract to complete a specific residence for the defendants. Plaintiffs have repeatedly argued that any labor performed and supplies furnished in the construction of the residence was on a "time and materials basis." According to plaintiffs, the defendants' only obligation was to pay for labor and materials *as the services were rendered.* Conversely, plaintiffs were not bound to complete the project at the estimated price, and could have terminated construction at any time, save for the fact that Mr. Dunkelberger felt "personally obligated" once he started a project, and testified that he had so informed defendants' banker. Given that the individual plaintiffs had been paid in full and no longer had any individual interest in the project once the sole proprietorship discontinued doing business and the corporation began furnishing the labor and materials in April of 1968, as the trial court found, it is difficult to understand the plaintiffs' position that the individual contractor's license has anything to do with this case. The fact remains that the corporation as a separate entity is attempting to prosecute a claim for compensation as a contractor without having taken any steps to comply with the registration statute. This, the corporation may not do.

We cannot terminate this opinion without reference to an opinion filed by the Supreme Court after entry of the order appealed from herein. In *Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.*, 83 Wn.2d 453, 519 P.2d 1 (1974), the court found substantial compliance with the contractor's registration act where two unlicensed contractors completed a project on which a licensed contractor (1) remained obligated under an original contract to complete the project, and (2) remained significantly involved or associated with the unlicensed contractors during the completion of the project. We note, preliminarily, that plaintiffs do not rely upon that case to support their contentions on appeal—and rightly so because plaintiffs have contended throughout the protracted trial and in this appeal that there was no underlying contract or continuing obligation to complete a specific building. Rather, plaintiffs have adamantly maintained that the contract was merely to supply the labor and material requested by the defendants as work progressed on the overall project.

In *Northwest Cascade Constr., Inc.*, the court really appears to have held not that the unlicensed contractors substantially complied with the contractor's registration act, but rather that the continued involvement of the licensed contractor to fulfill his original and *continuously imposed* contractual obligation constituted some form of a substitution for compliance. The apparent rationale was that the party for whom the construction was being performed still had the protection afforded by the licensee's surety bond and liability insurance, and the indicia of minimal responsibility which flow therefrom. We have already noted that in the case at bench it is unlikely the individual plaintiff's surety and liability carrier would have been obligated to compensate anyone for *corporate* defaults or derelictions, and again we emphasize that there was no continuing obligation upon which the *individual* contractor remained bound. Accordingly, we find in *Northwest Cascade Constr., Inc.* no measure of support for plaintiff's contentions.

There is substantial evidence to support the finding that

the individual plaintiffs were paid in full, and the plaintiff corporation is precluded from prosecuting its claim by operation of RCW 18.27.080, *supra*.

The judgment is affirmed.

ARMSTRONG, C.J., and PEARSON, J., concur.

Petition for rehearing denied April 15, 1975.

Review denied by Supreme Court May 20, 1975.