[No. 25531-2-I.   Division One.   November 5, 1990.]

B.A. VAN DE GRIFT, INC., *Appellant,* v. SKAGIT
COUNTY, *Respondent.*

*Sigurd Borgersen* and *Schwabe, Williamson & Wyatt,* for appellant.

*Michael E. Rickert, Prosecuting Attorney,* and *John R. Moffat, Deputy,* for respondent.

PEARSON, J.*—B.A. Van de Grift, Inc. (Van de Grift) appeals from a summary judgment in favor of respondent Skagit County (Skagit). Van de Grift contends that material factual issues remain regarding its claims against Skagit following cancellation of a road construction contract. We disagree and affirm the dismissal.

The materials submitted to the trial court, viewed in the light most favorable to Van de Grift, establish the following

---

*Judge Vernon R. Pearson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

sequence of events. On August 13, 1985, Skagit entered into a road construction contract with Crown for work on a portion of the Lake Cavanaugh Road. The project was to be completed in 40 days.

In mid–October 1985, work on the project ceased, at least in part because of bad weather. About 10 percent of the work had been completed; Crown had used 38 of the 40 days allotted for the project. Skagit officials expressed some dissatisfaction with Crown's progress on the project.

Sometime in February 1986, Robin LaRue, a supervising engineer for the Skagit County Public Works Department, contacted John J. King, Crown's principal, to determine if Crown intended to complete the project. King indicated to LaRue that Crown wished to complete the project and would hire appellant Van de Grift as a new subcontractor. According to Van de Grift, Skagit officials agreed to grant Crown a 30–day extension on the contract, provided that Van de Grift take over responsibility for completing the project, and promised to pay Van de Grift "in accordance with Crown's contract."

On March 17, 1986, Crown and Van de Grift entered into a road construction agreement in which Van de Grift undertook to perform all of Crown's obligations on the Lake Cavanaugh Road project "as if it were the original contracting party." The agreement provided, among other things, that Crown would arrange with Skagit to have further payment checks issued jointly to Crown and Van de Grift. Skagit maintains that it did not learn of the agreement until sometime after July 30, 1986.

On May 2, 1986, Skagit officials approved Crown's request to subcontract to Van de Grift 12 enumerated items comprising 27.8 percent of the Lake Cavanaugh Road project. Van de Grift began work on the project on about May 5, 1986. Skagit issued at least one check jointly to Crown and Van de Grift, but then, apparently at Crown's request, issued checks made out solely to Crown.

On July 18, 1986, Skagit requested that Van de Grift cease work on the project; less than 10 percent of the

project remained to be completed. On July 30, 1986, Skagit informed Crown by letter that it was terminating the contract "for failure to prosecute the work continuously to completion with promptness and diligence." Skagit subsequently arranged for the remaining work to be completed.

At about the time that Skagit canceled the contract with Crown, Van de Grift learned that its contractor's registration certificate had lapsed in November 1985. Van de Grift's registration was reinstated in May 1987. Van de Grift was not licensed, bonded, or insured during the period that it worked on the Lake Cavanaugh Road project.

On August 6, 1986, Van de Grift filed the instant action against Crown and John J. King, alleging that Crown had breached the terms of its agreement with Van de Grift. On April 4, 1988, Van de Grift filed an amended complaint for damages against Skagit, alleging that Skagit had agreed to the substitution of Van de Grift for Crown on the Lake Cavanaugh Road project and that Skagit had breached the terms of the novation by refusing to permit Van de Grift to complete the project. Van de Grift also alleged it was entitled to recover from Skagit as a third–party beneficiary of a contract modification between Crown and Skagit and on the basis of promissory estoppel.

On December 11, 1989, the trial court granted Skagit's motion for summary judgment, dismissing Van de Grift's claims against Skagit on three grounds: (1) that Van de Grift's action was barred for failure to comply with the contractor registration requirements of RCW 18.27; (2) that no valid contract arose between Van de Grift and Skagit; and (3) that Van de Grift had no enforceable rights as a third party beneficiary under the contract between Crown and Skagit. This appeal followed.

Van de Grift first contends that the trial court erred in determining that its action against Skagit was barred by the Washington contractors registration act, RCW 18.27. In order to obtain a certificate of registration, a contractor must, among other things, provide evidence of a surety bond and public liability insurance (or provide an assigned

account). RCW 18.27.040, .050. In order to maintain an action for breach of contract or for compensation, a contractor must generally be duly registered:

> No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract.

RCW 18.27.080.

A contractor need not, however, always demonstrate literal compliance with the requirements of RCW 18.27 in order to maintain an action. "Substantial compliance" is sufficient

> so long as the compliance satisfies the legislative purpose behind the registration act to protect the public against "unreliable, fraudulent, and incompetent contractors."

*Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.,* 83 Wn.2d 453, 460, 519 P.2d 1 (1974) (quoting *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971)); *see also* RCW 18.27.140. The legislative purpose underlying RCW 18.27 is satisfied when the contractor seeking to maintain an action has met the bonding and insurance requirements of RCW 18.27,

> those indicia of minimal financial responsibility required by the statutory enactment to protect the general public against the unreliable, fraudulent or incompetent contractor.

*Murphy v. Campbell Inv. Co., supra* at 422; *accord, Expert Drywall, Inc. v. Brain,* 17 Wn. App. 529, 564 P.2d 803 (1977), *review dismissed,* 92 Wn.2d 1004 (1978). Whether there has been substantial compliance with the requirements of RCW 18.27 depends on the specific facts of each case. *Expert Drywall, Inc. v. Brain, supra* at 537.

Van de Grift identifies three circumstances in support of its assertion that it substantially complied with the requirements of RCW 18.27: (1) the protection provided by Crown's bond; (2) the lack of any injury to Skagit; and

(3) Van de Grift's good faith effort to obtain bonding in November 1985.

Van de Grift contends that the statutory policy underlying RCW 18.27 was satisfied here because Van de Grift's performance was protected by Crown's bond. No evidence in the record, however, supports this bare allegation. More important, even if true, such a contention is insufficient to raise a material factual issue.

Courts applying the doctrine of substantial compliance have repeatedly identified bonding *and* insurance as the requisite indicia of "minimum financial responsibility." *See, e.g., Udall Constr. Co. v. Elliott*, 18 Wn. App. 850, 573 P.2d 809 (1977). Van de Grift has not alleged that its work on the project was covered by public liability insurance or any comparable policy.

■ Van de Grift maintains that Skagit has not established that Van de Grift was unable "to stand behind its obligation" on the project. This argument misperceives the nature of Van de Grift's burden on summary judgment. Having established that Van de Grift was unregistered, Skagit met its threshold burden on summary judgment. *See* CR 56(c). The burden then shifted to Van de Grift to establish a material factual dispute on the issue of substantial compliance:

> [The] nonmoving party . . . may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value . . . [and] must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.

*Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

■■ Van de Grift has failed to establish, or even to allege, the existence of public liability insurance, one of the two key indicia of minimum financial responsibility required for substantial compliance with RCW 18.27. On summary judgment, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Young v. Key*

*Pharmaceuticals, Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). If an unlicensed contractor could establish substantial compliance merely by identifying a properly registered contractor also participating in the project, the incentives for registration underlying RCW 18.27.080 would be substantially diminished.

Van de Grift's reliance on *Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc., supra,* is misplaced, both factually and legally. In *Northwest Cascade,* the court held that there had been substantial compliance with RCW 18.27 when two unlicensed contractors completed work that was begun by a properly licensed and bonded contractor. The court's decision rested on evidence that the licensed contractor "remained obligated under the original contract to complete the buildings" and was "sufficiently involved in the construction of the project to afford [the owner] the protection of the registration and bond contemplated by the registration act." *Northwest Cascade,* at 463.

The unlicensed contractors in *Northwest Cascade,* however, were employees of the duly licensed contractor and while performing the work in question

> were to utilize the various reporting numbers of [the licensed contractor] in filing state and federal reports required to be submitted, and would utilize [the licensed contractor's] registration license and bond under the registration of contractors law.

*Northwest Cascade,* at 455. No comparable circumstances exist here. In addition, there is no evidence that Crown had any role in the project once Van de Grift started work. Nor has Van de Grift alleged that its work on the project was covered by Crown's liability insurance.

As a subsequent decision has noted, the court in *Northwest Cascade*

> really appears to have held not that the unlicensed contractors substantially complied with the contractor's registration act, but rather that the continued involvement of the licensed

contractor to fulfill his original and *continuously imposed* contractual obligation constituted some form of a substitution for compliance. The apparent rationale was that *the party for whom the construction was being performed still had the protection afforded by the licensee's surety bond and liability insurance, and the indicia of minimal responsibility which flow therefrom.*

(Last italics ours.) *Dunkelberger v. Baker,* 12 Wn. App. 917, 923, 533 P.2d 433 (1975). In any event, whether the rationale in *Northwest Cascade* is properly characterized as substantial compliance or "substitute compliance," the decision rests squarely on evidence that the contractor seeking recovery was covered by both a surety bond and liability insurance. Van de Grift has failed to allege facts that would bring this case within the scope of *Northwest Cascade.*

█ Van de Grift's contention that substantial compliance is appropriate because Skagit did not suffer any injury and would be unjustly enriched is equally unpersuasive. It is well established that defenses of estoppel or unjust enrichment will not be permitted to overcome the statutory bar to suit imposed by RCW 18.27. *See, e.g., Murphy v. Campbell Inv. Co., supra; Vedder v. Spellman,* 78 Wn.2d 834, 480 P.2d 207 (1971).

Finally, Van de Grift contends that it made a good faith effort to obtain the required registration in November 1985. Van de Grift presented evidence that it had submitted instructions, along with a check, to its insurance broker in November 1985 "to take care of the renewal of its bond and . . . provide all appropriate licensing agencies with the necessary notification." Van de Grift further maintains that it was surprised to learn in July 1986 that its license had lapsed and gave "[i]mmediate instructions" to its insurance broker to "process" the November 1985 check.

█ For purposes of summary judgment, Van de Grift's contentions must be regarded as true. However, a good faith effort to obtain a certificate of registration is of no significance for a determination of substantial compliance

where, as here, the unlicensed party has not demonstrated the requisite indicia of financial responsibility.

The lapse in Van de Grift's license was neither brief nor based on some technical rejection by the licensing agency. Van de Grift's registration lapsed from November 1985 to May 1987, *i.e.*, for a period of more than a year after it began work on the project. Van de Grift has offered no explanation for the 9–month delay between its discovery of the lapse in July 1986 and the resumption of registration in May 1987.

In summary, Van de Grift has failed to establish a material factual dispute on the issue of substantial compliance. Because Van de Grift's action against Skagit is therefore barred, we do not reach Van de Grift's contentions that it is entitled to recover against Skagit on the basis of promissory estoppel or as a third party beneficiary.

Judgment affirmed.

GROSSE, A.C.J., and PEKELIS, J., concur.