[No. 16624.  Department One.  December 12, 1921.]

THOMAS IRVING, *Respondent*, v. D. E. FERGUSON,
*Appellant*.[1]

OFFICERS (18) — EXTENT OF TERM — STATUTES — CONSTRUCTION.
Rem. 1915 Code, § 4910-10, and Laws 1919, p. 475, § 23, providing
for the appointment of voting machine custodians temporarily for
election purposes, and for the appointment of a "permanent" em-
ployee as custodian in case any county or city shall own two hun-
dred or more machines, does not contemplate the appointment of
a custodian to hold for life or during good behavior, such term
being used solely to distinguish between the two classes of cus-
todians, and hence such "permanent" custodian is removable at the
pleasure of the appointing power.

Appeal from a judgment of the superior court for
King county, French, J., entered June 13, 1921, in favor
of the plaintiff, in an action for an injunction, tried to
the court.  Reversed.

*Malcolm Douglas, Arthur Schramm, Jr.,* and *R. L.
Bartling,* for appellant.

*Robert H. Evans,* for respondent.

TOLMAN, J.—Respondent brought this action seek-
ing an injunction restraining the appellant, as county
auditor of King county, from discharging respondent
from the office of chief custodian of voting machines of
King county.  Upon the filing of the complaint, a show
cause order issued.  Appellant appeared and demurred,
and, without ruling on the demurrer, and after argu-
ment of counsel, on the return day of the show cause
order, an injunction *pendente lite* was issued, and this
appeal followed.

It appears from respondent's complaint and his affi-
davit filed therewith, that King county has two hundred
or more voting machines, and is authorized by § 23,

[1] Reported in 202 Pac. 269.

ch. 163, Laws of 1919, p. 475, to employ a chief custodian of voting machines; that respondent was appointed to that position in June, 1919, gave a bond as required by the statute, and held the position, performed the duties thereof, and received the salary fixed by law therefor, up to and including the month of May, 1921. In May, 1921, appellant by a written communication, which gave no reason therefor, attempted to discharge respondent, such discharge to take effect at the close of the month, and this action was filed on the last day of May to prevent the taking effect of the discharge until respondent's rights should be determined by the court.

The section of the statute referred to, so far as it relates to the question now to be considered, reads as follows:

"Section 4910-10. The county auditor of a county, the clerk of a city, or other district in which voting machines are to be used shall cause same to be properly prepared therefor; and for that purpose shall employ for such time as is necessary one or more competent persons who shall be known as the voting machine custodians, who shall be sworn to perform their duties honestly and faithfully, and for such purpose shall be considered as officers of election, and shall be paid for the time actually spent in the discharge of their duties in the same manner as other election officers are paid. One custodian shall be employed for each twenty machines; if more than one be employed they shall be selected from the political parties entitled to representation on a board of election officers: *Provided, however,* the county auditor of a county, the clerk of a city, or other district having two hundred (200) voting machines or more, shall appoint as a permanent employe, a competent mechanic who shall be known as the chief custodian of voting machines, who shall be sworn to perform his duties honestly and faithfully, and shall furnish a corporate surety bond in the sum of Five Thousand ($5,000.00) dollars for the honest and

faithful performance of his duties, and whose salary shall be the sum of Two Hundred dollars per month, to be paid out of the general fund of said county, city or other district, in the same manner as provided by law for the payment of salaries.

"Said chief custodian of voting machines shall supervise the work of all other voting machine custodians provided for by law, and shall school and instruct said custodians and have general charge and supervision of the work of said custodians in the preparation of voting machines for elections and shall check and approve the work of all custodians after the preparation of the voting machines for elections by said custodians, and shall also have charge of the instruction schools for election officials provided for by law, and shall have charge of the procuring and rental of all polling places in precinct where voting machines are to be used, and shall have continuous charge of the maintenance, upkeep and care of the voting machines of said county, city or district.

"No persons shall be eligible for appointment to the office of chief custodian of voting machines who shall not have had an actual experience in the duties as prescribed herein for the period of at least two (2) years in the conduct of elections with voting machines in a county, city or district conducting its elections with at least one hundred (100) machines."

Respondent seems to stress the words "as a permanent employe," and therefrom attempts to draw the conclusion that one appointed as chief custodian under this act becomes a permanent officer holding his office during good behavior, and his tenure of office cannot be subjected to the influence of partisan strife, or his place be subject to the spoils system in politics. There are no doubt good reasons why one in such a position should be entirely trustworthy, and why his continuance in office should not depend, directly or indirectly, upon the result of any election for which he may prepare and test the machines, but that lies with the legis-

lature. We see nothing in the legislative act, when considered in the light of the political history of this state, which has never heretofore provided for any officer, from the highest to the lowest, to hold during good behavior, which convinces us that the legislature was intent upon making such a radical change, or, if it were, why it should have used the language which it did, or fail to say so in clear and unmistakable terms.

When the fact is considered that the legislature was providing for two classes of custodians, the first temporary, to be employed for a day or two at a time covering the period necessary to receive and record the vote; the other permanent in the sense of being employed regularly the year around, for the purpose of repairing and caring for the machines while not in use, and instructing the persons who should be temporarily in charge of them on election day, and supervising them at such times, it is self-evident that the word "permanent" was used solely to distinguish between the two classes of custodians, and not for the purpose of fixing a term of office which might extend for the lifetime of the official. The supreme court of the United States, in passing upon a similar question arising under a similar statute, said:

"The tenure of the judicial officers of the United States is provided for by the constitution; but, with that exception, no civil officer has ever held office by a life tenure since the foundation of the government. Even judges of the territorial courts may be removed by the President. *McAllister v. United States,* 141 U. S. 174, 35 L. Ed. 693, 11 Sup. Ct. Rep. 949. To construe the statute as contended for by appellant is to give an appraiser of merchandise the right to hold that office during his life, or until he shall be found guilty of some act specified in the statute. If this be true, a complete revolution in the general tenure of office is effected, by implication, with regard to this particular office. We

think it quite inadmissible to attribute an intention on the part of Congress to make such an extraordinary change in the usual rule governing the tenure of office, and one which is to be applied to this particular office only, without stating such intention in plain and explicit language, instead of leaving it to be implied from doubtful inference.'' *Shurtleff v. United States,* 189 U. S. 311, 47 Law Ed. 828.

Since, therefore, the legislature did not, in plain terms, provide that the chief custodian should hold office during good behavior, nor otherwise fix the term, the general rule must apply, that the appointing power may remove the officer at pleasure. *State ex rel. Lopas v. Shagren,* 91 Wash. 48, 157 Pac. 31; Mechem on Public Officers, § 445; 29 Cyc. 1371 and 1408; 22 Ruling Case Law, p. 562; 15 C. J. 494.

Indeed, this rule is admitted by respondent, and since we have found that the statute does not create an office to be held during good behavior, or fix a definite term, it follows admittedly that the county auditor, having by the terms of the act power to appoint a chief custodian, had also the power to remove him at pleasure.

The judgment of the trial court is reversed.

PARKER, C. J., FULLERTON, MITCHELL, and BRIDGES, JJ., concur.