[No. 35717. *En Banc.* May 11, 1961.]

OPPORTUNITY TOWNSHIP, *Appellant,* v. GEORGE DOEPKE, *Respondent.*[*]

*Edmund E. Lozier* and *Dressel & Lehan,* for appellant.

*Geo. W. Young,* for respondent.

ROSELLINI, J.—We are asked to construe the statutes relating to townships and to determine whether a township poundmaster must be elected by the electors or appointed by the board of supervisors, and whether the statutes prescribe a definite term of office for him.

The respondent was first appointed poundmaster by the supervisors of Opportunity township in the year 1940, according to the town records which were introduced in evidence in the trial of this action. He was reappointed from time to time over the succeeding years; however, the

[*]Reported in 361 P. (2d) 754.

minutes of the town meeting show that in 1947, he was elected by the electors. Premises which he owned were designated by the electors as the pound. In 1956, the electors passed an ordinance regulating dogs, some of the provisions of which were to be enforced by the poundmaster.

Throughout the years, the respondent's compensation was determined by agreement with the supervisors. He was last appointed poundmaster, by the supervisors, in January, 1959. The following May, they discharged him. However, the respondent refused to abdicate the office, so the supervisors instituted this action to enjoin him from holding himself out as poundmaster of Opportunity township.

A trial was had, and at its conclusion the trial court determined that the office of poundmaster was an elective office, that the respondent was elected in 1947 and had been holding over in the office since that time, inasmuch as no successor had been elected and qualified. The court also concluded that he was entitled to remain in the office until January, 1960, and was entitled to reasonable compensation, which it found to be the amount which he had been receiving each month under his latest agreement with the supervisors.

The appellant contends that the court erred in so holding.

Insofar as our research and the briefs of counsel reveal, the statutes in question have not been construed by this court. Nor have we been able to discover any case involving a similar question in the reports of other states. We therefore must confine ourselves to the language of the statutes themselves, and the applicable rules of construction.

The laws governing township organization are contained in Title 45 of RCW. The legislative powers of townships are vested in the electors, and the executive powers reside in the board of three supervisors, the town clerk, the treasurer, and the assessor. Other elective officers are the justice of the peace and the constable. RCW 45.12.080 provides that all of these officers are to be elected at town meetings. RCW 45.12.180 provides that they are to be elected by ballot. All other officers if not otherwise provided by law, are to be

chosen either by yeas or nays or by a division, as the electors determine.

RCW 45.12.100 (1) provides that the electors have the power to determine the number of poundmasters and the location of pounds. And RCW 45.36.010 provides:

"Whenever the electors of any town determine at their annual meeting to erect one or more pounds therein, the same shall be under the care and direction of such poundmasters as are chosen or appointed for that purpose. [1895 c 175 § 95 . . .]"

In RCW 45.36.030, the poundmaster is required to make a report to the supervisors on any animal which he has impounded and sold, and pay over to them the balance remaining after deduction of his legal fees and expenses. This portion of the statute also prescribes the fees to be charged for care of impounded farm animals; however, it does not mention household pets.

RCW 45.16.010 provides that the supervisors, town clerk, treasurer, assessor, and constable must take an oath of office. Each of these is an officer who must be elected, according to the provisions of RCW 45.12.080. That section places in the board of supervisors the power to appoint overseers of roads and highways. These appointive officers are required to take oaths, but the poundmaster is not. However, he is directed in RCW 45.16.040 to file an acceptance of office.

RCW 45.24.010 provides that the supervisors shall have charge of such affairs of the town as are not by law committed to other town officers. Among their powers is the power to appoint a police judge. They are the only township officers given appointive powers. The power to fill vacancies in elective offices resides in the county commissioners under the provisions of RCW 45.20.020.

RCW 45.16.120 provides:

"Town officers, except as otherwise provided, hold their offices for one year and until others are elected or appointed in their places and are qualified. All officers shall qualify and enter upon the duties of their offices at the first regular meeting of the board of supervisors following their election, and such first meeting of the board of supervisors shall be

held within thirty days after such election. [1923 c 13 § 5 . . .]"

It will be seen from the above resume that there is a small hiatus in the law governing poundmasters. The statutes do not designate the person or persons by whom they shall be appointed nor do they expressly provide a term of office. Although the electors are given the power to determine whether and where there will be pounds, and how many poundmasters there shall be, they are not designated as the choosing or appointing body. Such other appointments as are provided for in the act are to be made by the supervisors. The elective officers named in RCW 45.12.080 are required to take an oath. Poundmasters are only required to file an acceptance of their office. They are responsible directly to the supervisors for the conduct of their pounds. They are not included among the officers who must be elected at town meetings, under RCW 45.12.080.

■ In an endeavor to gain some clue to the legislative intent in this matter, we have examined the statutes providing for the election of poundmasters in first, second, and third class cities and in towns, resorting to the rule that statutes which are in *pari materia* should be construed together and harmonized if possible. This rule was well stated in *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693, where it was said:

"Statutes in *pari materia* must be construed together. Statutes in *pari materia* are those which relate to the same person or thing, or the same class of persons or things; and in construing a statute, or statutes, all acts relating to the same subject matter or having the same purpose, should be read in connection therewith as together constituting one law. The object of the rule is to ascertain and carry into effect the intent of the legislature, and it proceeds upon the supposition that the several statutes having to do with related subject matters were governed by one spirit or policy, and were intended to be consistent and harmonious in their several parts and provisions. *State ex rel. American Piano Co. v. Superior Court,* 105 Wash. 676, 178 Pac. 827; *Paltro v. Aetna Cas. & Surety Co.,* 119 Wash. 101, 204 Pac. 1044."

These statutes concern the same class of persons—poundmasters—and have the same purpose, to provide the method of their appointment and their terms of office.

RCW 35.27.370 (9) gives the town council authority to establish a pound and to appoint a poundkeeper, to be paid out of the fines and fees imposed upon the owners of the impounded stock. RCW 35.27.070 provides that the mayor may appoint a poundmaster, and further provides that all appointive officers shall hold office at the pleasure of the mayor and shall not be subject to confirmation by the town council. We will not attempt to resolve the apparent conflict in these provisions but will proceed to third class cities.

In third class cities, RCW 35.24.290 (2) provides that the city council has power to prevent and regulate the running at large of any or all domestic animals within the city limits and to cause the impounding and sale of such animals. RCW 35.24.020, while it does not mention poundkeepers, specifies the elective officers and certain appointive officers and provides that other appointive officers may be provided by ordinance or statute. The mayor, this provision says, shall appoint and at his pleasure may remove all appointive officers.

In cities of the second class, the city council is authorized to establish a stock pound and regulate the running about at large of animals. RCW 35.23.440 (12). The poundkeeper is an appointive officer under RCW 35.23.120. The mayor is empowered to appoint all appointive officers in RCW 35.23.180, and under 35.23.210 he is given the power to remove them "for any cause by him deemed sufficient by and with the concurrence of the vote of at least six members of the city council."

The statutes pertaining to cities of the first class do not mention pounds or poundkeepers, but presumably such cities have power to establish pounds and hire poundkeepers under the omnibus grant of power in RCW 35.22.570. No provision relating to pounds or poundkeepers is found in Title 36, pertaining to counties, although counties are authorized to require dog licenses.

It will be observed that in none of the local governmental

units is the office or position of poundkeeper or poundmaster made elective, and in each of them, the power of appointment and removal is vested in the mayor—the person in whom the power of making other appointments resides. No fixed term of office is provided in any instance.

If the provisions relating to the appointment of poundmasters in townships are to be brought into harmony with the other statutes on this subject, we must conclude that the legislature intended the office to be appointive ("chosen or appointed" are the words used) and that it intended the appointive power to reside in that body which had the power to make other appointments, which happened to be the board of supervisors.

The long-established practice in Opportunity township, where the electors took it upon themselves to elect the poundmaster only once in twenty years, and at all other times acquiesced in his appointment by the supervisors, indicates that the people of that township also understood that the power of appointment resided in the board. No reason is advanced why the legislature should have chosen to rest this power in the legislative body in the case of townships, while placing it in the executive in all other instances. We therefore hold that the power to appoint the poundmaster was intended to be exercised by the board of supervisors.

It must also be concluded that the legislature intended the poundmaster to be removable at the will of the appointing power, since no term of office was expressly fixed. It is true that according to RCW 45.16.120 town officers, except as otherwise provided, hold their offices for one year and until others are elected or appointed in their places and are qualified. But it is apparent that this provision was meant to pertain to those officers who are elected at town meetings, since it directs that all officers shall qualify and enter upon their duties at the first regular meeting of the board of supervisors following their election, and further provides for the holding of such a meeting within thirty days after such election. Manifestly this was not intended to apply to the poundmaster, whose duties are not concerned with the

township government and are not performed at meetings of boards of supervisors.

 Since the legislature did not, in plain terms, provide that the poundmaster should hold office during good behavior, nor otherwise fix the term, the general rule must apply, that the appointing power may remove the officer at pleasure. *Irving v. Ferguson*, 118 Wash. 37, 202 Pac. 269.

The judgment is reversed and the cause remanded with directions to grant the injunction as prayed.

ALL CONCUR.

August 21, 1961. Petition for rehearing denied.