[No. 3476–1. Division One. May 9, 1977.]

EXPERT DRYWALL, INC., ET AL, *Respondents,* v.
W. EUGENE BRAIN, ET AL, *Appellants.*

*Julin, Fosso & Sage* and *Eugene H. Sage,* for appellants.

*Reed, McClure, Moceri & Thonn, John D. Wilson, Jr., Foster, Pepper & Riviera, Peter V. Gulick, Hugh F. Carney,* and *Charles A. Burgeson,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

Subcontractors who furnished labor and materials in the construction of a building recovered a judgment foreclosing a lien against the owner of the building, even though the general contractor who contracted with them was not registered under the contractor registration act, RCW 18.27, at the time. The owner appeals.

The facts are not disputed but their legal effect is.

Ollas Construction Company, Inc. (the general contractor) entered into a written contract with Dr. W. Eugene Brain (the owner) to remodel a residence into a dental clinic for him. The general contractor subcontracted part of the job to Expert Drywall, Inc., Long Painting Company and Holmes Electric Company (the subcontractors).

The labor performed and materials supplied by the subcontractors were satisfactory to both the owner and the general contractor and their work was accepted. The subcontractors timely filed labor and material liens against the owner's property pursuant to RCW 60.04.010 (hereinafter the mechanics' lien statute). The owner paid one of the subcontractors in part but paid nothing to the other two. The subcontractors thereupon brought this suit to foreclose their liens against the property.

Causes of action between the owner and the general contractor were by stipulation severed from the case. Therefore, when the case went to trial, it was as a lien foreclosure action brought by subcontractors to foreclose their labor and materialmen's liens against real property improved by their labor and materials.

At the time the subcontracts were entered into, and when the subcontractors did most of their work, they were all registered under the contractor registration act, RCW 18.27 (hereinafter the registration act), but the general contractor had temporarily let its registration under that act lapse.

The owner's position is that since the general contractor contracted with the subcontractors at a time when the general contractor was not registered under the registration act, the general contractor was not the agent of the owner within the requirements of the mechanics' lien statute.

The mechanics' lien statute creates a lien upon property for those who provide labor and materials on the property,

> whether performed, furnished, or supplied *at the instance of the owner of the property subject to the lien or his agent; . . .*

(Italics ours.) RCW 60.040.010. That statute further provides in part that

> *Contractors* or subcontractors *required to be registered under chapter 18.27 RCW* or licensed under chapter 19.28 RCW *shall be deemed the agents of the owner for the purposes of establishing the lien created by this chapter only if so registered* or licensed.

(Italics ours.) RCW 60.04.010.[1]

---

[1]RCW 60.04.010 in its present form reads in full as follows:

"Lien authorized—Bond by railroad company. Every person performing labor upon, furnishing material, or renting, leasing or otherwise supplying equipment, to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street railway, wagon road, aqueduct to create hydraulic power or any other structure or who performs labor in any mine or mining claim or stone quarry, or trustees of any type of employee benefit plan, has a lien upon the same for the labor performed, contributions owed to the employee benefit plan on account of such labor performed, material furnished, or equipment supplied by each, respectively, whether performed, furnished, or supplied at the instance of the owner of the

A variety of errors were made in connection with the general contractor's registration under the registration act. They were not only committed by the general contractor but also by its insurance and bonding company and by state registration officials as well. Reference to the particulars of the general contractor's registration situation therefore becomes necessary.

Larry Martin Ollas (hereinafter Ollas) originally conducted his contracting business as a sole proprietorship doing business in the name and style of "Ollas Construction Company." Beginning in approximately 1967, a surety bond in the required amount, and an insurance certificate evincing the required public liability and property damage insurance, were filed on his behalf with the State as required by the registration act. RCW 18.27.040–.050. Initially, Ollas was registered in his own name. Beginning in 1970, he was also registered under the name in which he did business, "Ollas Construction Company."

property subject to the lien or his agent; and every registered or licensed contractor, registered or licensed subcontractor, architect, or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter: *Provided,* That whenever any railroad company shall contract with any person for the construction of its road, or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics, materialmen, and equipment suppliers, and persons who supply such contractors with provisions, all just dues to such person or to any person to whom any part of such work is given, incurred in carrying on such work, which bond shall be filed by such railroad company in the office of the county auditor in each county in which any part of such work is situated. And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor. Contractors or subcontractors required to be registered under chapter 18.27 RCW or licensed under chapter 19.28 RCW shall be deemed the agents of the owner for the purposes of establishing the lien created by this chapter only if so registered or licensed. Persons dealing with contractors or subcontractors may rely, for the purposes of this section, upon a certificate of registration issued pursuant to chapter 18.27 RCW or license issued pursuant to chapter 19.28 RCW covering the period when the work or material shall be furnished, and lien rights shall not be lost by suspension or revocation of registration or license without their knowledge."

In 1970, Ollas also incorporated his business as Ollas Construction Company, Inc. He remained the sole owner of the business following its incorporation and served as its president.

Ollas made his first mistake when he did not reregister as a corporation under the registration act at the time he incorporated his business. Instead, he waited until after the events here in issue had occurred and then did so.

It is clear that Ollas' insurance company, which wrote not only his public liability and property damage insurance but which also issued his surety bond, had to have known that Ollas incorporated his business since the insurance company thereafter referred to the contracting business in the certificates of insurance it regularly sent to the State as "Larry Ollas doing business as Ollas Construction Company, Incorporated." The company obviously erred in referring to an individual "doing business as" a corporation. It also erred when it continued to issue the bond it furnished to the State in the name, "Ollas Construction Company" without designating it as a corporation.

The state office which handled the registration of contractors compounded the errors of Ollas and the insurance and bonding company by not picking up from the insurance certificates as they were filed the fact that the business had been incorporated.[2] In addition, beginning in 1970, all of the registration renewal fees were paid by the corporation.

[2]Although most of the facts in this case were ultimately stipulated to, the assistant supervisor of the state office which handled the registration of contractors under the registration act did testify. He was questioned and answered as follows:

MR. WILSON: Q. I'm asking if the Certificate—such as the ones that are in the file, would put the Department on notice that the applicant is now doing business in the capacity as a corporation as opposed to an individual proprietorship?

THE WITNESS: A. If you're asking me if the man should have been registered as a corporation, yes, he should have.

Q. (By Mr. Wilson) I understand that. But I'm asking you, should the Department have picked up the fact that his Insurance Certificates were on behalf of the corporation?

A. This we should have done, yes.

On July 24, 1972, when the general contractor, Ollas Construction Company, Inc., entered into its contract with the owner, the State registration was therefore in the name of "Ollas Construction Company." Thereafter the registration lapsed on August 1, 1972, for nonpayment of the renewal fee required by RCW 18.27.070, and was not reinstated until October 31, 1972. It was during this 3–month period, when the registration had lapsed, that the general contractor contracted with the three subcontractors and during which period the subcontractors furnished most of their labor and materials on the construction job.

The subcontractors added their own quota of mistakes to the chain of errors when they entered into their contracts with the general contractor, Ollas Construction Company, Inc., without first checking to see if the corporation they were contracting with had a current registration certificate.

The trial court concluded that under this state of facts, the general contractor had substantially complied with the requirements of the registration act. The trial court further concluded that substantial compliance with the registration act satisfied the requirement of the mechanics' lien statute that the general contractor be registered in order to be deemed the agent of the owner for the purpose of establishing a lien for laborers and materialmen under the mechanics' lien statute. A judgment was thereupon entered foreclosing the subcontractors' liens against the owner's property.

The owner's appeal raises two basic issues.

ISSUES

ISSUE ONE. Did the general contractor substantially comply with the registration act?

ISSUE TWO. Does substantial compliance with the registration act by a contractor satisfy the requirement of the mechanics' lien statute that before a contractor can be deemed the agent of the owner for the purpose of establishing a lien under that statute, the contractor must be registered?

DECISION

ISSUE ONE.

CONCLUSION. Under the facts presented, the general contractor substantially complied with the requirements of the registration act, RCW 18.27, because the contractor's conduct basically satisfied the legislative purpose behind the act, which is to protect the public against unreliable, fraudulent and incompetent contractors.

The registration act was enacted by the legislature in 1963. Laws of 1963, ch. 77, p. 476. Since that time, it has been both amended by the legislature and interpreted by the courts with some regularity.

■■ We recently summarized the purpose of the registration act and the manner in which it functions:

The purpose of the act as discussed in *Stewart v. Hammond*, 78 Wn.2d 216, 219, 471 P.2d 90 (1970), has been reaffirmed often. There the court said:

RCW 18.27, *et seq.*, was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states. Public protection was sought by the registration and bonding of contractors. RCW 18.27.020–.040 inclusive. Noncompliance was discouraged by providing a criminal penalty, RCW 18.27.020, and by denying offenders access to the courts for collection of compensation for performance of work or for breach of contract. RCW 18.27.080.

*See also H.O. Meyer Drilling Co. v. Alton V. Phillips Co.*, 79 Wn.2d 431, 486 P.2d 1071 (1971); *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971). It was pointed out in *Jeanneret v. Rees*, 82 Wn.2d 404, 511 P.2d 60 (1973), that a contractor could not maintain an action for compensation for the performance of any work or for the breach of any contract without alleging and proving he was duly registered and had a current valid certificate of registration unless (a) he had substantially complied with RCW 18.27 or (b) registration was not required because of one of the specific exceptions set forth in the act.

*Martinson v. Publishers Forest Prods. Co.*, 11 Wn. App. 42, 47, 521 P.2d 233 (1974). *Accord, Bremmeyer v. Peter Kiewit Sons Co.*, 16 Wn. App. 318, 322, 555 P.2d 1183 (1976).

The general contractor does not come within any of the exemptions in the registration act; therefore, the question becomes whether it had substantially complied with the act. A determination of whether there has been substantial compliance depends on the particular facts of each case. *Martinson v. Publishers Forest Prods. Co., supra* at 47.

Ollas' contracting business had been continuously registered under the registration act from 1967 through the November 1, 1974, trial of this case with the single exception of the 3-month lapse caused by the late payment of the $15 annual registration renewal fee, which gave rise to the present litigation. That registration would have been in the corporation's name since 1970 but for the mistake of someone in the state office handling the renewals. In any event, the information required of sole proprietorships and corporations is basically the same. RCW 18.27.030.

■ Nothing in the record before us shows who was at fault for the tardy payment of the one annual renewal fee, which resulted in the temporary lapse of registration. The trial court did find that

> Larry Martin Ollas was not aware that the Certificate of Surety Bond or the Certificate of Contractor's Registration were not in the name of Ollas Construction Company, Inc. until September, 1974. There is no evidence of any attempt by Larry Martin Ollas to mislead or defraud any of the parties or the Division of Professional Licensing by filings on his behalf. There is no evidence that Ollas Construction Company, Inc. was not a fiscally responsible general contractor.

*Finding of fact No. 16.* This finding has not been challenged on appeal and we will therefore consider it as a verity. *Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc.*, 83 Wn.2d 453, 461, 519 P.2d 1 (1974); *Ford v. Bellingham–Whatcom County Dist. Bd. of Health*, 16 Wn. App. 709, 713, 558 P.2d 821 (1977).

Because of the insurance company's error, the certificate of insurance which it sent to the State included the corporation's name, "Ollas Construction Company, Incorporated," in an ambiguous fashion. That same company, which knew of the existence of the corporate entity, nevertheless continued to write the contractor's surety bond in the name, "Ollas Construction Company" without specifically identifying it as a corporation. The insurance and bonding company on the one hand, and Ollas on the other, plainly intended to have the construction company, by whatever name, insured and bonded, and premiums were paid and accepted to that end. There was a meeting of the minds as to that, and there is no suggestion of fraud, wrongdoing, overreaching or misrepresentation on the part of anyone.

Under these facts relating to the insurance certificate and bond, to the extent that there was ambiguity or error on the insurance certificate or bond concerning the name of the legal entity covered thereby, these documents were subject to being reformed to show the corporation as the true bonded and insured entity. *Gaskill v. Northern Assurance Co.,* 73 Wash. 668, 673, 132 P. 643 (1913); *Rocky Mountain Fire & Cas. Co. v. Rose,* 62 Wn.2d 896, 903, 385 P.2d 45, 1 A.L.R.3d 876 (1963). The owner was thus at all times afforded the protection, contemplated by the registration act, of having a general contractor which was insured and bonded in the required statutory amounts.

The cases of *Dunkelberger v. Baker,* 12 Wn. App. 917, 533 P.2d 433 (1975) and *Nicolaysen v. Burgess,* 10 Wn. App. 224, 517 P.2d 222 (1973), relied on by the owner in his brief, are distinguishable. In neither of those cases was the required insurance and bonding protection provided. We have also considered the California decisions cited by the owner, including the case of *General Ins. Co. of America v. Superior Court,* 26 Cal. App. 3d 176, 102 Cal. Rptr. 541 (1972), but do not find them pertinent. Our state has a "registration" act whereas California has a "licensing" act.

While these statutes have some superficial similarities, conceptually they are entirely different.[3]

■ *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971) is the leading case in this state for the substantial compliance doctrine as it relates to the registration act. In *Murphy,* the appellant contractors had submitted an application for registration but the application was temporarily rejected. During the period of time when the application was rejected, the parties entered into the contract in issue in that case. In a situation somewhat similar to the one before us, the Supreme Court held:

In the instant case, the appellant contractors had, in fact, substantially complied with the requirements of RCW 18.27. They had secured both the bond required by RCW 18.27.040 and the liability insurance required by RCW 18.27.050. But for a technical defect in the appellants' original application for registration, the appellants would have possessed the requisite registration prior to the date upon which the parties entered into their written agreement.

In the instant case, it is a fact, as pointed out above, that the appellant contractors had substantially complied with the provisions of RCW 18.27; *i.e.,* they had secured bonding and insurance—those indicia of minimal financial responsibility required by the statutory enactment to protect the general public against the unreliable, fraudulent or incompetent contractor. Since appellants had substantially complied with the requirements crucial to the underlying design intended by the legislature in the enactment of RCW 18.27, we hold that the appellants' complaint does state a claim upon which relief can be granted.

*Murphy v. Campbell Inv. Co., supra* at 422.

---

[3]In California, in order to obtain an original license under the Contractors License Law, an applicant must not only meet designated financial responsibility qualifications, but must also submit a written application to a registrar appointed by the Contractor's State License Board. The registrar in turn investigates, classifies and qualifies applicants by written or oral examination, or both, before a license is issued to the contractor. Cal. Bus. & Prof. Code, §§ 7000 *et seq.* (Deering); 11 Cal. Jur. 3d *Building and Construction Contracts* §§ 21–37 (1974).

The reasoning of *Murphy* is persuasive in the present case. We hold that under the facts of this case the general contractor had substantially complied with the provisions of the registration act, RCW 18.27, at the time it contracted for the subcontractors to provide labor and materials on the construction job. *See Northwest Cascade Constr., Inc. v. Custom Component Structures, Inc., supra* at 460.

ISSUE TWO.

CONCLUSION. The doctrine of substantial compliance applies in the interpretation of the mechanics' lien statute, RCW 60.04.010 (see footnote 1), in that a contractor required to be registered under the contractor registration act, RCW 18.27, shall be deemed the agent of the owner for the purpose of establishing a lien created by RCW 60.04-.010 if the contractor has substantially complied with the registration act at the time.

■■ As previously noted, the registration act was enacted in 1963. It was not until 1971 that the amendments to the mechanics' lien statute, which relate to the requirement of registration under the registration act, were adopted. Laws of 1971, 1st Ex. Sess., ch. 94, p. 577. The registration act and the amendments to the mechanics' lien statute both, however, show on their face that they have the same purpose or object, namely, they are a means of compelling contractors to register in order to effectuate the registration act's policy of protecting the public against unreliable, fraudulent and incompetent contractors. *Stewart v. Hammond,* 78 Wn.2d 216, 220, 471 P.2d 90 (1970); *Martinson v. Publishers Forest Prods. Co., supra.* The statutes, though separately enacted, are therefore in pari materia and should be construed together. *Paltro v. Aetna Cas. & Sur. Co.,* 119 Wash. 101, 204 P. 1044 (1922); *Opportunity Township v. Doepke,* 58 Wn.2d 237, 240, 361 P.2d 754 (1961).

Legislative intent is to be gleaned, if possible, from the language of a statute itself. *In re Renton,* 79 Wn.2d 374, 376, 485 P.2d 613, 58 A.L.R.3d 196 (1971); *State v. Scherck,* 9 Wn. App. 792, 796, 514 P.2d 1393 (1973). Legislation is

never written on a clean slate, however, nor is it ever read in isolation or applied in a vacuum. Every new enactment takes its place as a component part of what is nowadays in this jurisdiction, as in every other, an extensive and elaborate system of written laws. 2A C. Sands, *Sutherland Statutes and Statutory Construction* § 53.01 (4th ed. 1973).

As has been aptly expressed,

> Harmony and consistency are positive values in a legal system by reason of serving the interests of impartiality and minimizing arbitrariness. The practice of construing statutes by reference to other statutes is based upon the sound public policy of advancing those values.
>
> The practice of considering analogous legislation in the search for guidance as to how a doubtful statutory provision should be construed is supported by similar practices in other legal systems, notably the civil law.

(Footnotes omitted.) 2A C. Sands, *Sutherland Statutes and Statutory Construction, supra.*

■ Based on the foregoing, we hold that the doctrine of substantial compliance previously enunciated in connection with actions brought under the registration act, RCW 18.27, also applies in the present case. To hold otherwise would result in this anomalous situation: The general contractor would be able to sue the owner for its work because on July 24, 1972, when the general contractor contracted with the owner, its registration had not yet lapsed, RCW 18.27.080, and also because it had substantially complied with the registration act at all times; the subcontractors would be able to sue the general contractor for the work they had done, because they too were registered at the time they entered their subcontracts with the general contractor; but the subcontractors, who had fully and adequately performed the labor and furnished the materials for the improvement of the owner's property and who had properly and timely filed their liens, would be denied the right to enforce their liens against the property that they had improved even though the owner had at all times been fully accorded the protection contemplated by the registration act.

Since in this case the general contractor had substantially complied with the registration act at the time it contracted with the subcontractors for them to perform labor and furnish materials on the owner's property, the general contractor was the owner's agent for the purpose of the subcontractors establishing their liens against the owner's property under the mechanics' lien statute, RCW 60.04.010. The subcontractors' labor and materialmen's liens being proper and timely in all other respects, the trial court did not err in entering a judgment foreclosing the subcontractors' liens against the owner's property.

Affirmed.

SWANSON, J., concurs.

WILLIAMS, J., concurs in the result.

Petition for rehearing denied January 26, 1978.

Review by Supreme Court pending March 3, 1978.