[No. 46202-4-I. Division One. May 29, 2001.]

WILLIAMSON, INC., ET AL., *Appellants*, v. CALIBRE HOMES, INC., *Respondent*.

*Kenneth H. Davidson* (of *Davidson, Czeisler & Kilpatric*) and *Richard W. Hively, Jr.*, for appellants.

*David S. Kerruish* (of *Breskin & Witenberg, P.L.L.C.*), for respondent.

ELLINGTON, J. — A real estate broker and its unlicensed corporate salesperson brought this breach of contract action, seeking compensation for their services. The real estate brokers and salespersons act permits such actions only upon proof that plaintiffs were licensed before offering their services. The corporate salesperson was not licensed. The corporate salesperson substantially complied with the statute, however, because both its employees were licensed, and the purposes of the statute were thus fulfilled. No other asserted ground justified summary judgment, and we therefore reverse and remand.

## FACTS

Masters, Inc., was a licensed real estate broker operating a RE/MAX franchise. Masters authorized Williamson, Inc., to act as its agent. Curtis and Betsy Williamson are the sole shareholders and the only officers, directors, and employees of Williamson, Inc.[1] Throughout the relevant time period, Curtis and Betsy were licensed real estate salespersons. They formed the corporation upon the advice of their attorney after they married. The corporation has never attempted to obtain a real estate broker or salesperson license.

Calibre Homes, Inc., is a builder of single-family homes in Snohomish County. In 1998, Calibre executed letters of authorization appointing Masters its exclusive sales and listing agent for seven new developments. Pursuant to the letters of authorization, Calibre and Masters executed exclusive sale and listing agreements for each lot in the developments, authorizing Masters to appoint Williamson,

---

[1] Appellant Williamson, Inc., is referred to as "Williamson." Curtis and Betsy Williamson are referred to by their first names. Curtis and Betsy are not parties to this appeal.

Inc., as agent. Curtis and Betsy allege they each worked 40 to 80 hours per week exclusively for Calibre, and declined numerous job offers from other builders.

In May 1998, Calibre began construction of new homes in one of the developments, Pacific Pointe. Curtis and Betsy worked as the listing agents to sell the homes under construction. The Pacific Pointe development, which includes seven lots and an existing home, was completed and for sale before this lawsuit was filed. On December 31, 1998, Calibre terminated the services of Masters, Curtis, and Betsy. On January 8, 1999, five of the Pacific Pointe lots were listed with another broker. During January and February 1999, Calibre executed purchase and sale agreements for six homes in Pacific Pointe. Curtis and Betsy claim these sales resulted from their listing and marketing efforts.

Masters, Inc., and Williamson filed this action against Calibre to recover commissions due for locating properties, developing business and marketing plans for the seven developments, and performing services which resulted in sales within those developments. They alleged breach of contract, promissory estoppel, and quantum meruit.[2]

Calibre moved for summary judgment, arguing that Masters and Williamson were barred from bringing the action because Williamson is not a licensed real estate broker or salesperson; that Masters shared commissions with unlicensed Williamson in violation of RCW 18.85.330; that Williamson could not execute letters of authorization or listing agreements on Master's behalf because it was unlicensed; and that recovery based on promissory estoppel and quantum meruit would be illegal. The trial court granted Calibre's motion on unspecified grounds.

---

[2] Calibre counterclaimed for breach of contractual and fiduciary duties, and brought the same claims against Curtis and Betsy, who in turn counterclaimed against Calibre, incorporating by reference the factual allegations in the original complaint. By agreement of the parties, all counterclaims and third party claims were dismissed without prejudice.

## DISCUSSION

We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court.[3] Summary judgment is appropriate if, considering the facts and all reasonable inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[4]

*Substantial Compliance with the Statute*

The real estate brokers and salespersons act (brokers act)[5] bars actions for recovery of compensation for services as a broker or salesperson unless the person seeking recovery alleges and proves that the person was duly licensed before offering to perform any services or procuring any promise for payment. Appellants acknowledge that Williamson is not licensed. They argue, however, that Williamson substantially complied with the statute, and should be permitted to pursue this action. Whether the doctrine of substantial compliance applies to the brokers act is an issue of first impression.

■ The statute permits a corporation to become a licensed real estate salesperson. For purposes of chapter 18.85 RCW, the word "person" includes a corporation.[6] " 'Real estate salesperson' or 'salesperson' means *any natural person* employed, either directly or indirectly, by a real estate broker, *or any person* who represents a real estate broker in the performance of any of the acts specified in subsection (1) of this section."[7] Calibre contended at oral argument that the second clause should be read to include

---

[3] *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92, 993 P.2d 259 (2000).

[4] CR 56(c); *Trimble*, 140 Wn.2d at 93.

[5] Chapter 18.85 RCW.

[6] RCW 18.85.010(4).

[7] RCW 18.85.010(2) (emphasis added). The acts specified in subsection (1) include: "Sells or offers for sale, lists or offers to list, buys or offers to buy real estate or business opportunities, or any interest therein, for others." RCW 18.85.010(1)(a).

the word "natural." But the legislature used the terms deliberately; we assume the legislature meant exactly what it said.[8] And the statute sets out a procedure for a corporation to become licensed as a salesperson:[9]

> Any person desiring to be a . . . real estate salesperson, must pass an examination as provided in this chapter. Such person shall make application for an examination and for a license on a form prescribed by the director. Concurrently, the applicant shall:
>
> (1) Pay an examination fee as prescribed by the director by rule.
>
> (2) *If the applicant is a corporation, furnish a certified copy of its articles of incorporation, and a list of its officers and directors and their addresses.* . . .
>
> (3) Furnish such other proof as the director may require concerning the honesty, truthfulness, and good reputation, as well as the identity, which may include fingerprints, of any applicants for a license, or of the officers of a corporation.[10]

Regulations require that the application be submitted "on a form approved by the director and the real estate salesperson and associate broker application shall be signed by the broker or designated broker to whom the license will be

---

[8] *Geschwind v. Flanagan*, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993).

[9] In contrast, individuals wishing to obtain a salesperson license must satisfy the following requirements:

(1) The minimum requirements for an individual to receive a salesperson's license are that the individual:

(a) Is eighteen years of age or older;

(b) Except as provided in RCW 18.85.097, has furnished proof, as the director may require, that the applicant has successfully completed a sixty clock-hour course, approved by the director, in real estate fundamentals. The applicant must pass a course examination approved by the director. This course must be completed within five years prior to applying for the salesperson's license examination; and

(c) Has passed a salesperson's license examination.
RCW 18.85.095.

[10] RCW 18.85.120 (emphasis added). Calibre has cited no requirement for "such other proof," and we are aware of none.

issued."[11] Neither the statute nor the regulations impose any other requirement for a corporation to obtain a real estate salesperson license.[12]

Masters and Williamson contend that the substantial compliance doctrine should apply to the brokers act. Calibre argues the doctrine is limited to the contractors' registration act.[13] Our review of the cases applying the doctrine leads us to agree with Masters and Williamson.

 The contractors' registration act encourages compliance by requiring a contractor to be registered in order to maintain an action for breach of contract or for compensation.[14] Registration requires, among other things, evidence of a surety bond and public liability insurance.[15] A contractor who fails to register is not barred from bringing an action if the contractor can prove substantial compliance—that is, conduct that satisfies the legislative purpose of the statute.[16] Whether there has been substantial compliance depends on the particular facts of each case.[17]

The Supreme Court first applied the substantial compliance doctrine to the contractors' registration act[18] in *Mur-*

---

[11] WAC 308-124A-120.

[12] For a corporation to obtain a *broker's* license, a corporate officer must be designated as the broker and qualify for a broker's license. WAC 308-124A-200. We note that the "Application for Real Estate Salesperson/Associate Broker/ Branch Manager," available at the Department of Licensing web site, does not appear to contemplate a corporate applicant, while the broker application has a specific application for corporations. *Compare* application at<www.wa.gov/dol/- bpd/resales.htm> *with* application at<www.wa.gov/dol/bpd/rebroker.htm>.

[13] RCW 18.27.080.

[14] RCW 18.27.080. *See Expert Drywall, Inc. v. Brain*, 17 Wn. App. 529, 536, 564 P.2d 803 (1977).

[15] RCW 18.27.040, .050.

[16] *Expert Drywall*, 17 Wn. App. at 536.

[17] *Expert Drywall*, 17 Wn. App. at 537.

[18] The legislature amended the contractors' registration act in 1988 to codify the substantial compliance doctrine. *See* RCW 18.27.080; LAWS OF 1988, ch. 285, § 2. In 1997, the legislature added a new section providing: "This chapter shall be strictly enforced. Therefore, the doctrine of substantial compliance *shall not be used by the department* in the application and construction of this chapter." LAWS OF 1997, ch.

*phy v. Campbell Investment Co.*[19] Murphy was a contractor who had failed to provide the required proof of insurance. When he sought to foreclose on a mechanics' lien, his action was dismissed for want of registration. In reinstating his action on the basis of his substantial compliance, the Supreme Court identified the purposes of the statute as follows: "[T]o prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors" and to provide the "crucial devices utilized by the legislature to regulate and restrain unreliable, fraudulent, and incompetent contractors."[20] The "crucial devices" provided to protect the public are the required surety bond, and public liability and property damage insurance.[21] Because Murphy had both, and but for a "technical defect" in the original application would have possessed the license, the court held that Murphy had "substantially complied with the requirements crucial to the underlying design intended by the legislature in the enactment of RCW 18.27."[22]

We see no reason the same inquiry should not be undertaken with respect to the requirements of the brokers act. We have described its purpose:

> the primary purpose underlying the [A]ct [is] to promote a minimum standard of conduct for those engaged in the business of real estate who are often conducting their business in the capacity of a fiduciary. In short, the purpose of the Broker's Act is to protect the general public from negligent, unscrupulous, or dishonest real estate operators.[23]

---

314, § 1 (codified as RCW 18.27.050) (emphasis added). This amendment did not affect the availability of the doctrine in court actions under RCW 18.27.080.

[19] 79 Wn.2d 417, 486 P.2d 1080 (1971).

[20] *Murphy*, 79 Wn.2d at 421.

[21] *Murphy*, 79 Wn.2d at 421; *B.A. Van de Grift, Inc. v. Skagit County*, 59 Wn. App. 545, 550, 800 P.2d 375 (1990) (substantial compliance argument fails in the absence of public liability insurance).

[22] *Murphy*, 79 Wn.2d at 422.

[23] *Nuttall v. Dowell*, 31 Wn. App. 98, 108, 639 P.2d 832 (1982); *see also* LAWS OF 1941, ch. 252.

The brokers act thus protects the public from fraud and misrepresentation.[24] To this end, the statute requires passage of an examination, and compliance with continued educational requirements. These then are the "crucial devices" for purposes of a substantial compliance analysis.

■ Both requirements are satisfied here. Curtis and Betsy performed the services in question. Both have taken and passed the examination and have met ongoing educational requirements. The public and Calibre[25] were thus protected from negligent, unscrupulous, or dishonest real estate operators to the full extent contemplated by the statute.

As to the application requirement for corporate salespersons, obviously a corporation cannot sit for an examination. Submission of the articles of incorporation and list of officers ensures the legitimacy of the corporate entity. Here, there is no question the corporate entity is legal and its officers and employees are themselves duly licensed. Had Curtis and Betsy filed a corporate application and submitted the articles and the list of officers, the corporation would have been licensed because there is no other requirement. Like the contractor in *Murphy*, the only requirement not met was the filing of a document proving compliance—in Murphy's case, proof of insurance; in Williamson's, proof of corporate status.

Calibre makes much of the fact that no corporate application was ever filed. In some, perhaps most, circumstances, such an omission would indeed be fatal. Here, however, Curtis and Betsy inadvertently omitted a step which would have added nothing to the protections contemplated by the statute, because a parallel licensing procedure containing all the substantive requirements was fully complied with.

---

[24] *Springer v. Rosauer*, 31 Wn. App. 418, 421, 641 P.2d 1216 (1982).

[25] We reject the argument that Calibre, a "sophisticated builder," is not a member of the public protected by the statute.

We find support for our approach in *Spry v. Miller*.[26] Spry failed the test for a water well construction operator's license. Nonetheless, he bought a well-drilling rig and undertook to drill a well for Miller. He hired a licensed well drilling operator to perform the work. When Miller failed to pay, Spry sued, but did not (and could not) allege he was licensed and bonded. The court found Spry had substantially complied with the contractor registration requirements because a licensed individual actually performed the drilling:

> It has been held that the legislative purpose of the contractor registration act is achieved when the person bringing the action for compensation is associated with another person who is duly registered under the act, and who is obligated on the project sufficiently to provide the protection of his registration and bond. Since a well driller must meet standards for licensing which exempt him from registration, plaintiff achieved the purpose of the water well contractor's licensing statute by associating with . . . a licensed well driller. Courts have not insisted on literal compliance with a contractor registration law where the party seeking to escape his obligation has received the full protection which the statute contemplates.[27]

Like the well driller, Curtis and Betsy possessed the licenses that protect the public. Like the unlicensed water well contractor, Williamson, Inc., achieved the purposes of the statute by operating entirely through Curtis and Betsy. Calibre does not explain how the absence of a corporate license for Williamson, Inc., left Calibre or the public at large unprotected.

Calibre also contends, however, that this court implicitly rejected the doctrine of substantial compliance in connection with the brokers act in *Kennedy v. Rode*.[28] We disagree. The *Kennedy* court never considered the substantial compliance doctrine. There, a licensed real estate broker

---

[26] 25 Wn. App. 741, 610 P.2d 931 (1980).

[27] *Spry*, 25 Wn. App. at 745-46 (citation and footnote omitted).

[28] 41 Wn. App. 177, 181, 702 P.2d 1240 (1985).

filed an action for tortious interference. The court held his action was barred because his claim was based on a commission kickback agreement, which called for sharing a commission with an unlicensed person in violation of RCW 18.85.330. The court held the commission agreement violated public policy, stating: "The concern in the present case is not with a mere technical defense available only to a party to the contract. Kennedy's commission agreement violates public policy, and any claim arising out of it is . . . unenforceable."[29]

The facts here are not similar. The unlicensed person in *Kennedy* was a natural person, not a legal fiction, and was wholly ineligible to receive a share of the commission in exchange for referral of a real estate client. Nothing in *Kennedy* implicitly amounted to a rejection of the substantial compliance doctrine.[30]

Calibre also argues that the reasons for applying the substantial compliance doctrine to the contractors' act do not apply to the brokers act. Calibre relies on *Expert Drywall, Inc. v. Brain*,[31] where the court dismissed a California decision as not pertinent to consideration of substantial compliance with Washington's contractors' act, because the California act was a licensing scheme rather than a registration system.[32] The reference is to a California case, which acknowledged that the purposes of the contractors' licensing statute were satisfied but nonetheless refused to apply the substantial compliance doctrine.[33]

---

[29] *Kennedy*, 41 Wn. App. at 182.

[30] *See Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 220, 995 P.2d 63 (2000) (courts do not rely on cases that fail to specifically address and decide an issue).

[31] 17 Wn. App. 529, 564 P.2d 803 (1977).

[32] *Expert Drywall*, 17 Wn. App. at 538-39.

[33] *Gen. Ins. Co. v. Superior Court*, 26 Cal. App. 3d 176, 183-84, 102 Cal. Rptr. 541, 546-47 (1972). The case was expressly disapproved in *Asdourian v. Araj*, 38 Cal. 3d 276, 287, 696 P.2d 95, 211 Cal. Rptr. 703 (1985). We note that the California legislature has since amended the contractors' licensing statute several times to prohibit application of the substantial compliance doctrine except where the contractor proves that it was licensed before performing work, acted reasonably in trying to maintain a license, and did not know or reasonably should not have known that

(The *Drywall* court was apparently unaware that the case was at odds with California jurisprudence on the issue.) The *Drywall* effort to distinguish licensing versus registration schemes amounted to no more than an attempt to list the differing requirements. It remains, however, that compliance with all requirements of substance in either type of scheme would logically be subject to a substantial compliance analysis, and that is the California court's approach. The *Drywall* court's meaning is plain: the question is whether the protection contemplated by the statute was in fact afforded. The substantial compliance doctrine is not a creature unique to the contractors' registration context.[34]

Finally, Calibre argues that if the listing agreements are enforced, Calibre will be forced to "participate with Williamson, Inc., in offering real estate to the public through an unlicensed person, a continuing violation of the law."[35] Calibre protests too much. Assuming Masters and Williamson seek specific performance (which is not clear from their complaint), it appears that remedy is not available because the contracting party, Masters, no longer holds a brokers' license.[36] In any event, our holding that Williamson substantially complied with the licensing statute answers any lingering concern Calibre may have about continuing violations of law.

it was not licensed. *See Pac. Custom Pools, Inc. v. Turner Constr. Co.*, 79 Cal. App. 4th 1254, 94 Cal. Rptr. 2d 756, 761 (2000) (discussing CAL. BUS. & PROF. CODE § 7031).

[34] *See, e.g., Dep't of Ecology v. Adsit*, 103 Wn.2d 698, 694 P.2d 1065 (1985) (rancher who used the wrong form substantially complied with requirements of the water rights act). California has applied the substantial compliance doctrine to facts very similar to those in this case. *See Schantz v. Ellsworth*, 19 Cal. App. 3d 289, 96 Cal. Rptr. 783 (1971) (licensed broker doing business under fictitious name but not licensed under fictitious name had substantially complied with licensing statute; suit held not barred).

[35] Br. of Resp't at 35.

[36] In April 1999, Masters ceased operating as a brokerage, and Curtis and Betsy moved their licenses to other brokers. Calibre argues that Masters and Williamson are precluded from recovering commissions under the listing agreements because Masters' broker's license expired after Calibre terminated the relationship. But the statute requires only that the broker be licensed before performing services or procuring a promise for payment. *See* RCW 18.85.100.

We hold the doctrine of substantial compliance applies to the brokers act, and that under the facts here, Masters and Williamson substantially complied.[37] To hold otherwise under these circumstances would stress form over substance and could transform a socially desirable licensing scheme "into an unwarranted shield for the avoidance of a just obligation."[38]

*Inconsistency Between Letter of Authorization and Listing Agreement*

■ An inconsistency exists between the letter of authorization and the listing agreement for the Pacific Pointe development. In the letter of authorization, Calibre authorized Masters to execute a listing agreement on behalf of Calibre, providing for a six percent commission for the first $100,000 of the sale price and three percent thereafter. The exclusive sale and listing agreement, executed pursuant to the letter of authorization, provided for a flat six percent commission. Calibre argues this inconsistency invalidates the listing agreement in its entirety.

We do not agree. First, Calibre's reliance on principles of apparent authority is misplaced, since no third parties were involved.[39] Calibre offers no other support for its argument. Second, the letter of authorization is the controlling agreement; pursuant to the letter, Masters executed the listing agreement on its own behalf and on behalf of Calibre. Any deviation from the terms of the letter exceeds Masters' authority and invalidates that term.[40] Calibre is therefore

---

[37] Because we conclude Masters and Williamson substantially complied with the statute, we do not reach Calibre's arguments based on RCW 18.85.260 or .330 or Masters' and Williamson's quantum meruit claim.

[38] *Andrews Fixture Co. v. Olin*, 2 Wn. App. 744, 749-50, 472 P.2d 420 (1970) (holder of specialty contractor license substantially complied with requirement for general contractor).

[39] Calibre relies only upon *Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 898 P.2d 347 (1995), which involved whether an agent had actual or apparent authority to bind the principal where the agent executed a modification to an agreement.

[40] *McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 114, 992 P.2d 511 (1999) (agent's unilateral action does not bind the principal).

liable for commissions only to the extent authorized in the letter, which Masters does not dispute.

## CONCLUSION

Reversed and remanded.

COLEMAN and COX, JJ., concur.

Review granted at 145 Wn.2d 1015 (2002).